**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION AT DAYTON**

| | | |
|---|---|---|
| **KERRIE KIMPEL** | : | |
| 4120 Sintz Road | : | |
| Springfield, Ohio 45504 | : | |
| | : | CASE NO. |
| Plaintiff, | : | |
| | : | |
| v. | : | JUDGE |
| | : | |
| **CITY OF URBANA,** | : | |
| **DIVISION OF POLICE** | : | |
| c/o Mark M. Feinstein, Law Director | : | **VERIFIED COMPLAINT** |
| 205 South Main Street | : | |
| Urbana, Ohio 43078 | : | |
| | : | **JURY DEMAND ENDORSED HEREON** |
| Defendant. | : | |

## VERIFIED COMPLAINT

Now comes Plaintiff Kerrie Kimpel, by and through counsel, and for her Verified Complaint against Defendant City of Urbana, hereby states as follows:

## PARTIES

1.      Plaintiff Kerrie Kimpel (hereinafter "Ms. Kimpel" or "Plaintiff") is an individual residing in Clark County, Ohio and was at all times relevant herein an employee of Defendant City of Urbana, assigned to the Division of Police.

2.      Defendant City of Urbana is a political subdivision of the State of Ohio located in Champaign County, Ohio and was at all times relevant herein an employer of Plaintiff Kerrie Kimpel.

3.      The City of Urbana is an employer with fifteen or more employees.

1

## JURISDICTION AND VENUE

4.     Subject-matter jurisdiction over this action is conferred pursuant to 28 U.S.C. §1331 because the action arises under the laws of the United States, and supplemental jurisdiction over the Plaintiff's state law claims is conferred pursuant to 28 U.S.C. § 1367 because the federal and state law claims form part of the same case or controversy under Article III of the United States Constitution.

5.     Venue is proper in the United States District Court for the Southern District of Ohio, Western Division at Dayton, because the Plaintiff was employed by the City of Urbana in Champaign County, Ohio. Venue is further proper in this judicial district pursuant to 28 U.S.C. §1391(b)(2) as a substantial part of the events or omissions giving rise to the claims occurred within the Southern District of Ohio.

6.     Ms. Kimpel has complied with all jurisdictional prerequisites to the filing of this lawsuit and this Complaint is filed within ninety (90) days of Plaintiff's receipt of her Right to Sue letters on May 5, 2023 from the Equal Employment Opportunity Commission ("EEOC") which are attached as Exhibits 1 and 2.

## GENERAL ALLEGATIONS

7.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

8.     Plaintiff Kerrie Kimpel is a gay, white female who was employed as a police officer by the City of Urbana, Division of Police (hereinafter "Defendant" or "UPD"). Throughout her

employment with UPD, Ms. Kimpel was subjected to a hostile work environment because of her sex and sexual orientation as a gay female.

9.      Ms. Kimpel was hired by the City of Urbana in April of 2017 by Matthew Lingrell, the Urbana Chief of Police. She was the only gay officer in the department.

10.      During the first 15 months Ms. Kimpel worked for UPD, she received no discipline. She reported for work without incident and believed she had the support of the other officers in the department. She was eventually assigned to the position of property manager on the second shift, reporting to Sgt. Todd Pratt. Sgt. David Reese was assigned to first shift.

11.      On July 6, 2018, Ms. Kimpel spoke to Lt. Josh Jacobs about another officer who posted himself on Instagram drinking with his girlfriend who was underage. Although Lt. Jacobs told Ms. Kimpel that he would do everything he could to keep her identity confidential, on July 19, 2018, Lt. Jacobs notified Ms. Kimpel that a "packet" was being delivered to the accused officer which had her name in the investigation report. The officer resigned on July 20, 2018.

12.      On July 21, 2018, the officer who had resigned sent out a group text to several Urbana police officers identifying Ms. Kimpel as the "snitch" who was responsible for opening the investigation into his behavior. After this incident, police officers blocked Ms. Kimpel on Facebook, and Sgt. Reese began targeting Ms. Kimpel, setting her up to be disciplined.

13.      On August 22, 2018, Ms. Kimpel found photographs of another Officer's wife on Instagram and voiced that she felt they were inappropriate. Sgt. Reese viewed the pictures and said not to show him any more photographs. On August 23, 2018, Ms. Kimpel was called into Lt. Jacobs' office and was told UPD was conducting a Professional Responsibility Investigation (PRI) into the incident because Sgt. Reese was offended by her actions. A few days later, Chief Lingrell closed the PRI and stated the incident was blown out of proportion. He also acknowledged that he

had heard Ms. Kimpel state to other officers that she thought Sgt. Reese didn't like her. Seemingly, the Chief of Police knew about Ms. Kimpel's issues with Sgt. Reese as early as 2018. Ms. Kimpel later learned that before she was hired, Sgt. Reese told Chief Lingrell "if you hire Kerrie Kimpel, there is going to be trouble."

14.     Ms. Kimpel had no disciplinary or supervisory issues with UPD during the period from September 13, 2018 through December 11, 2018 while Sgt. Reese was off work to undergo surgery. On January 12, 2019, following Sgt. Reese's return, Ms. Kimpel received a Supervisory Discussion for being four minutes late to a briefing due to inclement weather. When Ms. Kimpel arrived at the briefing, she saw Sgt. Reese looking at his watch. After the briefing, Ms. Kimpel saw Sgt. Reese close the door to speak to the Sergeant. Ms. Kimpel later learned that Sgt. Reese pressured Sgt. Snyder into writing her up.

15.     In January of 2019, while Ms. Kimpel was the Property Control Officer, she self-reported an incident involving the Armory Cage lock being unlocked. Ms. Kimpel later learned that Sgt. Reese bragged about going to the Armory and unlocking the Property Cage and then told Lt. Jacobs that he had found it unlocked in order to get Ms. Kimpel in trouble.

16.     In January of 2019, Sgt. Reese knowingly interfered with Ms. Kimpel's requalification on weapons by incorrectly scoring her range proficiency and providing false information in connection with her requalification. Specifically, Sgt. Reese gave Ms. Kimpel a failing score of 19 out of 25 on her second attempt at qualifying with a Glock 17 9mm. This caused Ms. Kimpel to have to surrender her firearm until she received remedial training or made a third attempt. Ms. Kimpel's qualifications were scored differently from those of male, heterosexual officers. For example, Officer Robbie Evans was given 4 attempts in one day and then achieved a

4

passing score. Ms. Kimpel was given two attempts and then failed. This difference in treatment was confirmed by the Urbana Police Division Firearms Records.

17.     In February of 2019, following the incident involving her requalification on weapons, Ms. Kimpel filed a detailed report with Chief Lingrell outlining her concerns that Sgt. Reese was targeting her. A human resources specialist came in and conducted interviews and Ms. Kimpel was told that changes would be made to the department. However, this did not stop Sgt. Reese.

18.     In approximately February of 2020, Sgt. Pratt was promoted to 2nd shift Sergeant and became Ms. Kimpel's immediate supervisor. Ms. Kimpel told Sgt. Pratt that she did not trust Sgt. Reese. Sgt. Pratt told Ms. Kimpel she could always feel safe on his shift, and he would protect her from any issues with Sgt. Reese. He also informed Ms. Kimpel directly that Sgt. Reese often told him to write Ms. Kimpel up and stated he was not "handling her correctly."

19.     Ms. Kimpel initially believed Sgt. Reese was targeting her in retaliation for reporting the police officer for being an accomplice to underage drinking. However, as time went on, she learned that the real reason Sgt. Reese had a problem with her was because of her sexual orientation.

20.     Upon information and belief, on October 30, 2020, Sgt. Reese told Officer Brandon McCain that "this is a fag-free zone for the next three days." When Officer McCain asked Sgt. Reese what he meant, Sgt. Reese responded, "Kerrie's suspension started."

21.     Upon information and belief, on October 31, 2020, Sgt. Reese told Officer Casey Evans that it was a "fag-free zone" because Ms. Kimpel was on suspension. Sgt. Reese then laughed and said, "I told Brandon that yesterday, but it was funny, so I had to tell you too."

22.     Upon information and belief, on December 1, 2020, Officer Evans had a rash on her face and had to leave her shift to see her doctor. When Officer Evans returned, Sgt. Reese asked her if it "was contagious," and she responded that it was. Sgt. Reese then said, "I would tell you to go rub your face on Kerrie's locker, but I don't want you to catch the gay."

23.     Sgt. Reese had a fake Facebook account he used for investigation purposes. The name he used on the profile was Randy Miller. Upon information and belief, on July 21, 2021, Sgt. Reese and Officer McCain were text messaging each other and discussing the account. Dave said, "Luke tried to get me to send a friend request to Kerrie, but Randy hates Homo's." A copy of the screenshot of this text message exchange is attached as Exhibit 1.

24.     There is a Tosh.o video with the quote, "Just because the state says it's legal, it's not like God's going to let them into heaven. Okay? So, you can still sleep sound every night knowing that goal line defense is up at the pearly gates just going, "You're not getting in here faggots." Upon information and belief, Sgt. Reese would show other police officers the video, and then tell them about an incident where Ms. Kimpel was walking down the hallway, and he yelled, "queers don't go to heaven," and she hung her head and continued walking down the hallway. Ms. Kimpel was raised in a Christian home and was very upset when Sgt. Reese directed this hurtful comment toward her. Upon information and belief, Sgt. Reese has shown this video to numerous police officers.

25.     Ms. Kimpel heard Sgt. Reese describe an incident at Ikea when an "obviously gay man" was behind him in line and was "standing too close." Ms. Kimpel heard Sgt. Reese state that

he was afraid the man was trying to hit on him, and that he eventually left his cart in the line and said, "what the fuck is wrong with you," before leaving the store without making any purchases.

26.     Other UPD officers told Ms. Kimpel that Sgt. Reese was trying to turn everyone against her by telling them that she was a terrible person, that she was the worst cop they had, and that she recorded everything to try to get people fired. None of this was true.

27.     Upon information and belief, Sgt. Reese would periodically have the officers on his shift write a list of who they would want as back up, in order. He would make them put Ms. Kimpel last.

28.     Upon information and belief, Sgt. Reese also stated in the presence of other officers that if Ms. Kimpel was in a fight, he would not back her up. He would stand and watch Ms. Kimpel get beat up instead.

29.     Because of the incidents she observed as well as the information reported to her by other UPD officers, Ms. Kimpel did not feel safe anywhere near Sgt. Reese. She would get a feeling of dread in her stomach when she saw his vehicle in the parking lot, especially when she knew Sgt. Todd Pratt was not there to protect her.

30.     Ms. Kimpel saw Sgt. Reese physically assault two officers and did not feel safe on overtime because of his obsession and hatred of her.

31.     Upon information and belief, UPD officers blocked Ms. Kimpel on Facebook, refused to talk in front of her, and made comments to other officers about how they would not work with Ms. Kimpel. Ms. Kimpel was afraid UPD officers would not back her up in a physical altercation with a subject on the street.

32.     The hostile environment at UPD toward Ms. Kimpel, as a gay officer, was stressful and caused her to dread going to work. As a result, she began taking unscheduled time off due to

stress. Chief Lingrell indicated to Ms. Kimpel that the unscheduled time off was a barrier preventing Ms. Kimpel from attending Field Training Officer ("FTO") training school. Had Sgt. Reese not been targeting Ms. Kimpel because of her sexual orientation, Ms. Kimpel could have completed the training to become an FTO.

33.     Ms. Kimpel is a stress-eater. The stress created by Sgt. Reese caused Ms. Kimpel to gain weight, impacting her fitness. She lost 4 days of pay as a result of failing fitness tests.

34.     On October 26, 2021, Ms. Kimpel filed a charge of discrimination with the EEOC based on the ongoing sex and sexual orientation discrimination and hostile work environment she was experiencing during her employment with UPD. The EEOC charge was assigned Charge No. 532-2022-00106.

35.     On October 29, 2021, Sgt. Reese resigned from his position at UPD. His resignation was effective on October 30, 2021. The SF401 submitted to the state for Sgt. Reese stated that he "retired in good standing," even though by then UPD knew of the allegations of discrimination that had been made by Ms. Kimpel.

36.     On November 14, 2021, UPD initiated an investigation against Ms. Kimpel for using bad language in the presence of County dispatchers while she and another UPD officer were having dinner with the County dispatchers. The investigation was initiated less than three weeks after she filed her charge of discrimination on October 26, 2021.

37.     Ms. Kimpel learned she was under investigation on December 5, 2021, when she was placed on administrative leave for three incidents involving the use of derogatory language in front of other employees. The language she used was comparable to language used by other UPD officers who were not female or gay and who were not disciplined.

38.    UPD received the complaint regarding Ms. Kimpel on November 17, 2021 and had begun investigating the complaint by November 18, 2021, without notifying Ms. Kimpel she was under investigation. Ms. Kimpel was not aware that there had been a complaint regarding her conduct and returned to talk to the County dispatchers again on November 21, 2021, generating another incident. This incident involved Ms. Kimpel discussing a "gag" order related to an event that occurred three years earlier which Ms. Kimpel was subsequently told she could discuss. Ms. Kimpel was charged with "insubordination" for discussing the "gag" order even though she had permission to do so.

39.    The investigation resulted in nine different charges being brought against Ms. Kimpel. During the pre-disciplinary hearing, UPD informed Ms. Kimpel that the investigation related to the November 14, 2021 charges "would take a long time" and that UPD had 60 days to complete it. As a result, UPD could extend the investigation until February 3, 2022.

40.    UPD scheduled the exam given to police officers seeking promotion to Sergeant for February 5, 2022. Since Ms. Kimpel was facing up to 60 days of administrative leave, she could not feasibly be ready to take the Sergeant's exam on February 5, 2022. The 60-day administrative leave prevented Ms. Kimpel from taking the Sergeant's exam, limiting her future job opportunities and impeding her career advancement.

41.    The letter notifying Ms. Kimpel of her pre-disciplinary hearing indicated that the maximum level of discipline that UPD was considering was termination.

42.    During the three incidents in question, a straight, white, male officer in his probationary period participated in the conversations. Ms. Kimpel was placed on a 60-day administrative leave while UPD was completing its investigation and was facing termination in connection with these incidents. The straight, white, male officer only received a 3-day suspension.

43.     When Ms. Kimpel received the letter notifying her of the pre-disciplinary hearing, her lieutenant, Lt. Joshua Jacobs, told Ms. Kimpel that she was not permitted to discuss the investigation with her wife. When Ms. Kimpel asked her Union Representative if this was standard procedure, her Union Representative told her that this was the first time he had ever heard of someone being instructed not to speak to their legal spouse. During an interview, Lt. Jacobs also derogatorily referred to Ms. Kimpel's wife as "firefighter DeCola's ex-wife."

44.     The continued sex and sexual orientation bias, name calling, insults, and demeaning comments throughout Ms. Kimpel's employment with UPD, compounded with a public sixty-day administrative leave in the wake of filing her original charge with the EEOC, created such a toxic and hostile work environment for Ms. Kimpel that she was left with no choice but to resign.

45.     Ms. Kimpel submitted her letter of resignation on January 26, 2022 during her pre-disciplinary hearing. Her last day of employment with UPD was January 26, 2022. Lt. Jacobs filed her SF401 with the state as "resigned in lieu of termination."

46.     On June 1, 2022, Ms. Kimpel timely filed her second charge with the EEOC based on the ongoing discrimination, retaliation, and constructive discharge she experienced as a result of her sex and sexual orientation, as well as her protected activity of filing the original charge of discrimination with the EEOC.

47.     Following Ms. Kimpel's resignation, Defendant UPD had *one* female police officer and *zero* gay police officers on the force. Currently, Defendant UPD has no female or gay police officers on the force.

<u>COUNT I</u>
<u>SEX AND SEXUAL ORIENTATION DISCRIMINATION</u>
<u>IN VIOLATION OF 42 U.S.C. § 2000e-2(a)</u>

48.     Plaintiff Kerrie Kimpel re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

49.     42 U.S.C. §2000e-2(a)(1) makes it unlawful for an employer to discriminate against an employee on the basis of the employee's sex or sexual orientation with respect to her compensation, terms, conditions, or privileges of employment.

50.     Defendant is an employer within the meaning of 42 U.S.C. § 2000e(b).

51.     At all times relevant herein, Plaintiff Kerrie Kimpel was an employee of Defendant within the meaning of 42 U.S.C. § 2000e(f).

52.     Pursuant to 42 U.S.C. §2000e-2(a)(1), Plaintiff Kerrie Kimpel is entitled to protection from discrimination because of and/or on the basis of her sex and sexual orientation.

53.     At all relevant times herein, Plaintiff Kerrie Kimpel was qualified for her position.

54.     Throughout the course of her employment with Defendant, Plaintiff Kerrie Kimpel was discriminated against and subjected to ongoing harassment because of and/or on the basis of her sex and sexual orientation.

55.     Defendant, by and through Sgt. Reese, created a hostile work environment for Plaintiff Kerrie Kimpel by repeatedly making offensive, homophobic statements in Plaintiff's presence, as well as to other UPD police officers which caused other UPD officers to view her negatively.

56.     Sgt. Reese further discriminated against and harassed Plaintiff by bringing numerous unfounded accusations and complaints against her, encouraging other UPD officers to

take disciplinary action against Plaintiff, and by setting her up to be disciplined so that her employment would be terminated.

57.     Sgt. Reese's harassment of Plaintiff because of her sex and sexual orientation was so severe and pervasive that it created a hostile work environment which permeated all aspects of Plaintiff's employment so as to become a condition of her employment.

58.     Sgt. Reese did not subject the male UPD officers to such harassment.

59.     The harassment unreasonably interfered with Plaintiff Kerrie Kimpel's work performance by creating an intimidating, hostile, and offensive work environment. Plaintiff was stressed, fearful, and anxious while at work and concerned that her safety while on duty was being jeopardized.

60.     Plaintiff, like any reasonable person, would find the environment created by Defendant hostile and abusive.

61.     Plaintiff timely reported how she was being treated by Sgt. Reese in February of 2019, following the discrimination related to her requalification on weapons. Although Defendant claimed to be investigating Plaintiff's complaints, Defendant failed to take any corrective action to put an end to the discrimination and harassment that Plaintiff was experiencing. As a result, Plaintiff continued to have to endure working in a hostile work environment.

62.     Defendant constructively discharged Plaintiff Kerrie Kimpel by intentionally making her working conditions so untenable, hostile, and abusive that she felt compelled to resign.

63.     Defendant, by and through Sgt. Reese and others, treated Plaintiff Kerrie Kimpel differently than similarly situated, male employees, by mentally intimidating, ridiculing, and insulting Plaintiff and by subjecting her to unwarranted disciplinary action. Plaintiff was the only gay police officer employed by UPD.

64.     Defendant knew or should have known of the discrimination and harassment and failed to address the discrimination and harassment or to take any corrective action to stop it.

65.     Defendant therefore discriminated against Plaintiff Kerrie Kimpel with respect to the terms, conditions, and privileges of her employment on the basis of her sex and sexual orientation in violation of 42 U.S.C. §2000e-2 when its agents and/or employees subjected her to severe and pervasive discrimination and harassment because of and on the basis of her sex and sexual orientation.

66.     Defendant further discriminated against Plaintiff Kerrie Kimpel with respect to the terms, conditions, and privileges of her employment on the basis of her sex and sexual orientation in violation of 42 U.S.C. §2000e-2 by failing to address Sgt. Reese's discrimination against and harassment of Plaintiff on the basis of her sex and sexual orientation and by failing to remedy the hostile work environment to which Plaintiff was subjected.

67.     Defendant cannot proffer a legitimate, nondiscriminatory justification for refusing to address Sgt. Reese's ongoing discrimination against and harassment of Plaintiff Kerrie Kimpel, nor can Defendant proffer a legitimate, nondiscriminatory justification for the disciplinary action taken against her.

68.     Defendant violated 42 U.S.C. §2000e-2(a)(1) by discriminating against Plaintiff Kerrie Kimpel and by subjecting Plaintiff Kerrie Kimpel to a hostile work environment on the basis of her sex and sexual orientation.

69.     Defendant took numerous adverse employment actions against Plaintiff Kerrie Kimpel including, but not limited to, initiating a lengthy investigation against her for using derogatory language in front of other employees and placing her on a 60-day administrative leave that prevented her from being prepared to take the Sergeant's exam interfering with her promotion

opportunities, and ultimately constructively discharging her. Defendant also discriminated against Plaintiff by submitting a designation of "resigned in lieu of termination" on the SF401 submitted to the state when she resigned, when Sgt. Reese was designated as "retired in good standing."

70.     Defendant cannot proffer a legitimate, nondiscriminatory justification for subjecting Plaintiff to discriminatory treatment and this adverse employment action.

71.     Any proffered reasons given by Defendant for subjecting Plaintiff Kerrie Kimpel to discriminatory treatment and this adverse employment action are pretextual.

72.     The sex and sexual orientation discrimination that Plaintiff Kerrie Kimpel endured throughout her employment with Defendant, compounded by Defendant initiating a lengthy investigation against her for using derogatory language in front of other employees and placing her on administrative leave subject to termination for conduct engaged in by male officers who were not so disciplined created such a toxic work environment that Plaintiff Kerrie Kimpel was constructively discharged on January 26, 2022.

73.     Defendant constructively discharged Plaintiff Kerrie Kimpel by making her working conditions so intolerable that a reasonable person under the same or similar circumstances would have felt compelled to resign. The negativity and humiliation that Plaintiff faced when she was forced to endure homophobic and misogynistic remarks, as well as her knowledge that she was physically at risk because her fellow officers were likely not to back her up in a dangerous situation, made Plaintiff's work environment so intolerable that she acted reasonably under the circumstances in submitting her resignation.

74.     Plaintiff Kerrie Kimpel was qualified for her position at UPD as she had been, among other things, serving the City of Urbana as a police officer since 2017 and received no discipline until July of 2018.

75.     By engaging in the foregoing conduct, Defendant violated 42 U.S.C. §2000e-2(a)(1) by discriminating against Plaintiff Kerrie Kimpel on the basis of her sex and sexual orientation.

76.     As a direct and proximate result of Defendant's discriminatory actions, Plaintiff Kerrie Kimpel has and continues to incur significant compensatory damages and expenses including, but not limited to, lost wages and fringe benefits, diminished job opportunities, as well as damages related to anxiety and emotional distress.

77.     Each and every discriminatory action by Defendant complained of herein was intentional, motivated by malice and ill will, and/or done with reckless disregard for Plaintiff Kerrie Kimpel's protected rights, thereby entitling Plaintiff to recover punitive damages and attorney's fees.

## COUNT II
## SEX AND SEXUAL ORIENTATION DISCRIMINATION
## IN VIOLATION OF OHIO REVISED CODE §4112.02(A)

78.     Plaintiff Kerrie Kimpel re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

79.     R.C. §4112.02(A) makes it unlawful for an employer to discharge or otherwise discriminate against any employee on the basis of the person's sex and sexual orientation with respect to the tenure, terms, conditions, or privileges of that person's employment.

80.     Defendant is an employer within the meaning of R.C. §4112.01(A)(2).

81.     At all times relevant herein, Plaintiff Kerrie Kimpel was an employee of Defendant within the meaning of R.C. §4112.01(A)(3).

82.     Pursuant to R.C. §4112.02(A), Plaintiff Kerrie Kimpel is entitled to protection from discrimination because of and/or on the basis of her sex and sexual orientation.

83.     At all relevant times herein, Plaintiff Kerrie Kimpel was qualified for her position.

84.     Throughout the course of her employment with Defendant, Plaintiff Kerrie Kimpel was discriminated against and subjected to ongoing harassment because of and/or on the basis of her sex and sexual orientation.

85.     Defendant, by and through Sgt. Reese, created a hostile work environment for Plaintiff Kerrie Kimpel by repeatedly making offensive, homophobic statements in Plaintiff's presence, as well as to other UPD police officers which caused other UPD officers to view her negatively.

86.     Sgt. Reese further discriminated against and harassed Plaintiff by bringing numerous unfounded accusations and complaints against her, encouraging other UPD officers to take disciplinary action against Plaintiff, and by setting her up to be disciplined so that her employment would be terminated.

87.     Sgt. Reese's harassment of Plaintiff because of her sex and sexual orientation was so severe and pervasive that it created a hostile work environment which permeated all aspects of Plaintiff's employment so as to become a condition of her employment.

88.     Sgt. Reese did not subject the male UPD officers to such harassment.

89.     The harassment unreasonably interfered with Plaintiff Kerrie Kimpel's work performance by creating an intimidating, hostile, and offensive work environment. Plaintiff was stressed, fearful, and anxious while at work and concerned that her safety while on duty was being jeopardized.

90.     Plaintiff, like any reasonable person, would find the environment created by Defendant hostile and abusive.

91.     Plaintiff timely reported how she was being treated by Sgt. Reese in February of 2019, following the discrimination related to her requalification on weapons. Although Defendant claimed to be investigating Plaintiff's complaints, Defendant failed to take any corrective action to put an end to the discrimination and harassment that Plaintiff was experiencing. As a result, Plaintiff continued to have to endure working in a hostile work environment.

92.     Defendant constructively discharged Plaintiff Kerrie Kimpel by intentionally making her working conditions so untenable, hostile, and abusive that she felt compelled to resign.

93.     Defendant, by and through Sgt. Reese and others, treated Plaintiff Kerrie Kimpel differently than similarly situated, male employees, by mentally intimidating, ridiculing, and insulting Plaintiff and by subjecting her to unwarranted disciplinary action. Plaintiff was the only gay police officer employed by UPD.

94.     Defendant knew or should have known of the discrimination and harassment and failed to address the discrimination and harassment or to take any corrective action to stop it.

95.     Defendant therefore discriminated against Plaintiff Kerrie Kimpel with respect to the terms, conditions, and privileges of her employment on the basis of her sex and sexual orientation in violation of R.C. §4112.02(A) when its agents and/or employees subjected her to severe and pervasive discrimination and harassment because of and on the basis of her sex and sexual orientation.

96.     Defendant further discriminated against Plaintiff Kerrie Kimpel with respect to the terms, conditions, and privileges of her employment on the basis of her sex and sexual orientation in violation of R.C. §4112.02(A) by failing to address Sgt. Reese's discrimination against and harassment of Plaintiff on the basis of her sex and sexual orientation and by failing to remedy the hostile work environment to which Plaintiff was subjected.

17

97.     Defendant cannot proffer a legitimate, nondiscriminatory justification for refusing to address Sgt. Reese's ongoing discrimination against and harassment of Plaintiff Kerrie Kimpel, nor can Defendant proffer a legitimate, nondiscriminatory justification for the disciplinary action taken against her.

98.     Defendant violated R.C. §4112.02(A) by discriminating against Plaintiff Kerrie Kimpel and by subjecting Plaintiff Kerrie Kimpel to a hostile work environment on the basis of her sex and sexual orientation.

99.     Defendant took numerous adverse employment actions against Plaintiff Kerrie Kimpel including, but not limited to, initiating a lengthy investigation against her for using derogatory language in front of other employees and placing her on a 60-day administrative leave that prevented her from being prepared to take the Sergeant's exam interfering with her promotion opportunities, and ultimately constructively discharging her. Defendant also discriminated against Plaintiff by submitting a designation of "resigned in lieu of termination" on the SF401 submitted to the state when she resigned, when Sgt. Reese was designated as "retired in good standing."

100.     Defendant cannot proffer a legitimate, nondiscriminatory justification for subjecting Plaintiff to discriminatory treatment and this adverse employment action.

101.     Any proffered reasons given by Defendant for subjecting Plaintiff Kerrie Kimpel to discriminatory treatment and this adverse employment action are pretextual.

102.     The sex and sexual orientation discrimination that Plaintiff Kerrie Kimpel endured throughout her employment with Defendant, compounded by Defendant initiating a lengthy investigation against her for using derogatory language in front of other employees and placing her on administrative leave subject to termination for conduct engaged in by male officers who

were not so disciplined created such a toxic work environment that Plaintiff Kerrie Kimpel was constructively discharged on January 26, 2022.

103.    Defendant constructively discharged Plaintiff Kerrie Kimpel by making her working conditions so intolerable that a reasonable person under the same or similar circumstances would have felt compelled to resign. The negativity and humiliation that Plaintiff faced when she was forced to endure homophobic and misogynistic remarks, as well as her knowledge that she was physically at risk because her fellow officers were likely not to back her up in a dangerous situation, made Plaintiff's work environment so intolerable that she acted reasonably under the circumstances in submitting her resignation.

104.    Plaintiff Kerrie Kimpel was qualified for her position at UPD as she had been, among other things, serving the City of Urbana as a police officer since 2017 and received no discipline until July of 2018.

105.    By engaging in the foregoing conduct, Defendant violated R.C. §4112.02(A) by discriminating against Plaintiff Kerrie Kimpel on the basis of her sex and sexual orientation.

106.    As a direct and proximate result of Defendant's discriminatory actions, Plaintiff Kerrie Kimpel has and continues to incur significant compensatory damages and expenses including, but not limited to, lost wages and fringe benefits, diminished job opportunities, as well as damages related to anxiety and emotional distress.

107.    Each and every discriminatory action by Defendant complained of herein was intentional, motivated by malice and ill will, and/or done with reckless disregard for Plaintiff Kerrie Kimpel's protected rights, thereby entitling Plaintiff to recover punitive damages and attorney's fees.

## COUNT III
## RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e-3

108.    Plaintiff Kerrie Kimpel re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

109.    42 U.S.C. §2000e-3(a) makes it unlawful for any employer to discriminate against any individual or employee because that individual or employee has opposed any practice made unlawful by Title VII of the Civil Rights Act of 1964.

110.    In the manner described above, Defendant, through its employees and/or agents, engaged in a pattern and practice of sex and sexual orientation discrimination and harassment against Plaintiff Kerrie Kimpel creating a hostile work environment based on her sex and sexual orientation.

111.    Plaintiff Kerrie Kimpel engaged in protected activity by reporting Sgt. Reese's animus against her and the discrimination and harassment she was experiencing at UPD based on her sex and sexual orientation to Defendant and subsequently filing a charge of discrimination with the EEOC on October 26, 2021.

112.    Plaintiff Kerrie Kimpel had a reasonable belief that Defendant engaged in discriminatory practices and had a good faith basis for filing her charge of discrimination.

113.    Defendant had knowledge of Plaintiff's protected activity.

114.    In response to Plaintiff Kerrie Kimpel's protected activity, Defendant retaliated against Plaintiff and subjected her to several adverse employment actions including, but not limited to, subjecting her to a hostile work environment, unnecessarily initiating a lengthy investigation against her for using derogatory language in front of other employees and placing her on a 60-day administrative leave, and constructively discharging her. Defendant also retaliated against Plaintiff

by submitting a designation of "resigned in lieu of termination" on the SF401 submitted to the state when she resigned, when Sgt. Reese was designated as "retired in good standing."

115.    Defendant's conduct would have dissuaded a reasonable employee from making and/or supporting future complaints of unlawful discriminatory practices against it.

116.    Defendant cannot proffer a legitimate, nondiscriminatory justification for subjecting Plaintiff Kerrie Kimpel to these adverse employment actions and retaliation.

117.    Defendant, through its employees and/or agents, violated 42 U.S.C. §2000e-3(a), which prohibits retaliation against employees for complaining about unlawful discriminatory practices, by initiating a lengthy investigation against Plaintiff Kerrie Kimpel for using derogatory language in front of other employees and placing her on administrative leave subject to termination less than three weeks after Plaintiff filed her charge of discrimination with the EEOC in retaliation for having reported and opposed Defendant's violations of Title VII of the Civil Rights Act of 1964.

118.    Defendant's retaliatory actions prevented Plaintiff Kerrie Kimpel from being prepared to take the Sergeant's exam interfering with her promotion opportunities, and ultimately constructively discharging her.

119.    As a direct and proximate result of Defendant's retaliatory actions, Plaintiff Kerrie Kimpel has and continues to incur significant compensatory damages and expenses including, but not limited to, lost wages and fringe benefits, diminished job opportunities, as well as damages related to anxiety and emotional distress.

120.    Each and every retaliatory action by Defendant complained of herein was intentional, motivated by malice and ill will, and/or done with reckless disregard for Plaintiff

Kerrie Kimpel's protected rights, thereby entitling Plaintiff to recover punitive damages and attorney's fees.

**COUNT IV**
**RETALIATION IN VIOLATION OF R.C. 4112.02(I)**

121.     Plaintiff Kerrie Kimpel re-alleges and incorporates by reference the allegations set forth in the preceding paragraphs of the Complaint as if fully rewritten herein.

122.     R.C. 4112.02(I) makes it unlawful for any person to retaliate against another because the individual has opposed any unlawful discriminatory practice.

123.     In the manner described above, Defendant, through its employees and/or agents, engaged in a pattern and practice of sex and sexual orientation discrimination and harassment against Plaintiff Kerrie Kimpel creating a hostile work environment based on her sex and sexual orientation.

124.     Plaintiff Kerrie Kimpel engaged in protected activity by reporting Sgt. Reese's animus against her and the discrimination and harassment she was experiencing at UPD based on her sex and sexual orientation to Defendant and subsequently filing a charge of discrimination with the EEOC on October 26, 2021.

125.     Plaintiff Kerrie Kimpel had a reasonable belief that Defendant engaged in discriminatory practices and had a good faith basis for filing her charge of discrimination.

126.     Defendant had knowledge of Plaintiff's protected activity.

127.     In response to Plaintiff Kerrie Kimpel's protected activity, Defendant retaliated against Plaintiff and subjected her to several adverse employment actions including, but not limited to, subjecting her to a hostile work environment, unnecessarily initiating a lengthy investigation against her for using derogatory language in front of other employees and placing her on a 60-day administrative leave, and constructively discharging her. Defendant also retaliated against Plaintiff

by submitting a designation of "resigned in lieu of termination" on the SF401 submitted to the state when she resigned, when Sgt. Reese was designated as "retired in good standing."

128.     Defendant's conduct would have dissuaded a reasonable employee from making and/or supporting future complaints of unlawful discriminatory practices against it.

129.     Defendant cannot proffer a legitimate, nondiscriminatory justification for subjecting Plaintiff Kerrie Kimpel to these adverse employment actions and retaliation.

130.     Defendant, through its employees and/or agents, violated R.C. §4112.02(I), which prohibits retaliation against employees for complaining about unlawful discriminatory practices, by initiating a lengthy investigation against Plaintiff Kerrie Kimpel for using derogatory language in front of other employees and placing her on administrative leave subject to termination less than three weeks after Plaintiff filed her charge of discrimination with the EEOC in retaliation for having reported and opposed Defendant's violations of Title VII of the Civil Rights Act of 1964.

131.     Defendant's retaliatory actions prevented Plaintiff Kerrie Kimpel from being prepared to take the Sergeant's exam interfering with her promotion opportunities, and ultimately constructively discharging her.

132.     As a direct and proximate result of Defendant's retaliatory actions, Plaintiff Kerrie Kimpel has and continues to incur significant compensatory damages and expenses including, but not limited to, lost wages and fringe benefits, diminished job opportunities, as well as damages related to anxiety and emotional distress.

133.     Each and every retaliatory action by Defendant complained of herein was intentional, motivated by malice and ill will, and/or done with reckless disregard for Plaintiff Kerrie Kimpel's protected rights, thereby entitling Plaintiff to recover punitive damages and attorney's fees.

**WHEREFORE**, Plaintiff Kerrie Kimpel demands judgment against Defendant City of Urbana as follows:

**Count I – SEX AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF 42 U.S.C. §2000e-2(a)** – Enter judgment against Defendant for back pay, compensatory damages, and punitive damages, in an amount to be determined at trial but in excess of $75,000, plus prejudgment and post-judgment interest, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

**Count II –SEX AND SEXUAL ORIENTATION DISCRIMINATION IN VIOLATION OF R.C. 4112.02(A)** – Enter judgment against Defendant for back pay, compensatory damages, and punitive damages, in an amount to be determined at trial but in excess of $75,000, plus prejudgment and post-judgment interest, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

**Count III – RETALIATION IN VIOLATION OF 42 U.S.C. §2000e-3** – Enter judgment against Defendant for back pay, compensatory damages, and punitive damages, in an amount to be determined at trial but in excess of $75,000, plus prejudgment and post-judgment interest, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

**Count IV – RETALIATION IN VIOLATION OF R.C. 4112.02(I)** – Enter judgment against Defendant for back pay, compensatory damages, and punitive damages, in an amount to be determined at trial but in excess of $75,000, plus prejudgment and post-judgment interest, and such other and further relief this Honorable Court deems appropriate and just, including an award of attorneys' fees and costs.

24

Respectfully submitted,


/s/ Judith E. Galeano
Judith E. Galeano (0048366) Trial Attorney
Barbara K. Letcher (0046948) (Of Counsel)
Mowery Youell & Galeano, Ltd.
485 Metro Place South, Suite 220
Dublin, Ohio 43017
Phone: (614) 764-1444
Fax: (614) 760-8654
Email: jgaleano@myglaw.com
Email: bletcher@myglaw.com
*Attorneys for Plaintiff Kerrie Kimpel*


## JURY DEMAND

Plaintiff demands that a jury decide all claims asserted in this Complaint.


/s/ Judith E. Galeano
Judith E. Galeano (0048366) Trial Attorney
Barbara K. Letcher (0046948) (Of Counsel)
Mowery Youell & Galeano, Ltd.
485 Metro Place South, Suite 220
Dublin, Ohio 43017
Phone: (614) 764-1444
Fax: (614) 760-8654
Email: jgaleano@myglaw.com
Email: bletcher@myglaw.com
*Attorneys for Plaintiff Kerrie Kimpel*

## <u>VERIFICATION</u>

I, Kerrie Kimpel, being of legal age and sound mind, have read the foregoing Complaint, including all averments and allegations contained therein. I swear and affirm that the facts alleged are based upon my own knowledge, information, or belief, and that the facts, allegations, and information contained in the foregoing Complaint are true to the best of my knowledge.

_____
Kerrie Kimpel

Sworn to before me and subscribed in my presence this _20_ day of July, 2023.

_____
Notary Public

**Kyle James Podolak**
Attorney At Law
Notary Public, State of Ohio
My commission has no expiration date
Sec. 147.03 R.C.